## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VALENCIA STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3251 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of a denial of Social Security benefits, Plaintiff Valencia Stephens filed a Motion for Summary Judgment.[1]  Defendant Michael J. Astrue, Commissioner of Social Security, filed his own Motion for Summary Judgment and Brief.[2]  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **denies** Stephens's Motion and **grants** summary judgment for the Commissioner.

### I. BACKGROUND

Stephens is a 46-year-old woman with a high school education.[3]  She is morbidly obese and suffers from rheumatoid arthritis, back problems, osteoarthritis, and anxiety.[4]

---

[1] Dkt # 16.
[2] Dkt # 17, 18.
[3] Tr. at 21.
[4] Tr. at 21.

Stephens has previously worked as an assembly worker and telephone answering service operator.[5]

On January 6, 2009, Stephens applied for Title XVI supplemental security income benefits (SSI), alleging disability from rheumatoid arthritis as of December 1, 2007.[6]  The Commissioner denied Stephens's application initially and upon reconsideration.[7]  Stephens then requested and received a hearing before an administrative law judge (ALJ).[8]  ALJ Wendy Hunn issued a decision that Stephens is not disabled.[9]  The Appeals Council denied Stephens's request for review, making the ALJ's determination the Commissioner's final decision.[10]   Stephens now seeks judicial review of the ALJ's determination.

## A. Physical Symptoms and Diagnoses

The record contains medical records beginning on April 23, 2007, when Stephens visited an OBGYN.[11]  The physician recorded Stephens's weight at 281 pounds, but did not note any complaints of pain or soreness related to arthritis.[12]

Shortly thereafter, during a June 2007 doctor's visit, Stephens sought a refill of Ibuprofen to treat pain from heel spurs.[13]   At this visit, Stephens requested a patient

---

[5] Tr. at 21.
[6] Tr. at 94-97, 101-04, 143.
[7] Tr. at 54-62
[8] Tr. at 27-49.
[9] Tr. at 16-26.
[10] Tr. at 1-8.
[11] Tr. at 225.
[12] Tr. at 225.
[13] Tr. at 219- 220.

referral for lower back pain.[14]   Stephens stated that she felt discomfort after standing for long periods of time, but that her pain was generally relieved with Ibuprofen and she had no back pain on the day of the appointment.[15]   Although she claimed to have spurs in her spine, a physical examination revealed that Stephens's lumbar spine was normal without tenderness or masses, and that she had a full range of motion without pain.[16]   At this visit, Stephens was diagnosed with a calcaneal spur in her heel and degenerative changes of the joint in her big toe.[17]   At 5' 9.5" and 308 pounds, Stephens was also assessed as obese and told to lose weight.[18]   During the visit, Stephens relayed her plans to start school and try to obtain a job.[19]

Stephens was referred to outpatient physical therapy for treatment of her foot pain.[20]   When she visited a physical therapist at the beginning of 2008, Stephens was diagnosed with Achilles tendonitis and was using a cane to aid her with balance and walking.[21]   Stephens stated that she was taking business classes at Houston Community College and working one day a week.[22]

On February 1, 2008, Stephens went to the San Jose Clinic for an orthopedic visit, complaining of pain in her hands, feet, knees, ankle, and neck.[23]   Stephens claimed her pain had increased since December of 2007 and was no longer relieved by Ibuprofen or

---

[14] Tr. at 220.
[15] Tr. at 220.
[16] Tr. at 221.
[17] Tr. at 222.
[18] Tr. at 221-222.
[19] Tr. at 220.
[20] Tr. at 251.
[21] Tr. at 251.
[22] Tr. at 251.
[23] Tr. at 226.

Naproxen.[24]  Stephens was diagnosed with rheumatoid arthritis and was told to follow up with a rheumatology consult,[25] but she failed to show up for that appointment.[26]

Stephens again visited a doctor in March 2008, seeking a refill of medication and treatment for a cough and nasal congestion.[27]  She complained of bilateral joint pains that she alleged had been occurring for several years.[28]  Stephens told the physician that an outside M.D. had prescribed her Prednisone to alleviate pain.[29]  A chest X-ray was ordered and Stephens was instructed to return for a follow-up appointment in three months.[30]

An X-ray of Stephens's lumbar spine on April 10, 2008 indicated pseudospondylolisthesis at the L4-L5 joint level, which was secondary to her facet joint arthritis.[31]  Stephens was also found to have right knee arthritis with moderate to large size joint effusion.[32]

At her next appointment, Stephens again complained of knee pain, which she stated had increased in the past week and was causing her difficulty walking and sitting for prolonged periods of time.[33]  Stephens stated she was using her cane more and that she was taking a new medication, Methotrexate, in addition to Prednisone and

---

[24] Tr. at 226.
[25] Tr. at 227.
[26] Tr. at 229.
[27] Tr. at 240.
[28] Tr. at 240.
[29] Tr. at 240.
[30] Tr. at 244.
[31] Tr. at 252.
[32] Tr. at 253.
[33] Tr. at 237.

Naproxen.[34]   The physician increased Stephens's dosage of Prednisone to 20 mg daily and continued her other medications.[35]

On August 6, 2008, Stephens visited the doctor complaining of left back pain which she had been having intermittently for four days.[36]   She was prescribed Cyclobenzaprine and instructed to apply moist heat to her back.[37]

By her August 21, 2008 rheumatology appointment, Stephens's weight had increased to 376.3 pounds.[38]   Her primary complaint was back and knee pain that prevented her from standing or walking more than five minutes at a time.[39]   The physician refilled Stephens's medications and referred her to a physical therapist.[40]

At a rheumatology clinic visit in December 2008, Stephens complained of joint pain and swelling.[41]   Stephens was instructed to get a resting wrist splint and quad cane, and her medications were adjusted, adding Humira injections and tapering the Prednisone from 20 mg to 5 mg per day.[42]

### B. *Mental Health Issues*

Stephens has a history of substance abuse issues and a history of crack cocaine use beginning in 1990.[43]   In January 2007, Stephens was arrested for prostitution.[44]   Stephens

---

[34] Tr. at 237.
[35] Tr. at 238.
[36] Tr. at 233.
[37] Tr. at 234.
[38] Tr. at 247.
[39] Tr. at 247.
[40] Tr. at 247.
[41] Tr. at 246.
[42] Tr. at 246.
[43] Tr. at 217.
[44] Tr. at 34, 217.

also admitted to using cocaine during this period.[45]  After her arrest and three months'
incarceration, Stephens resided at a transitional living facility.[46]  While at the facility, she
participated in weekly individual and group psychotherapy sessions.[47]  Her therapist at
the facility assessed her as having problems with anxiety/depression, poor impulse
control, substance abuse issues, family of origin issues, and low self esteem.[48]  That
therapist assessed Stephens as having a Global Assessment of Functioning (GAF) score
of 50.  The therapist noted that Stephens's anxiety/depression was being treated with
medication.

Similarly, Stephens's mental health problems were noted to be responding to
medication in July 2007, when she saw a behavioral health specialist.[49]  Stephens
reported "improved sleep, less restlessness and agitation, improved concentration [and]
less claustrophobia."  She also reported that she had a "good appetite, improved energy,
good motivation [and] good mood."[50]  The notes state that Stephens told medical
personnel that "she feels 70 to 80% improvement with Paxil" and that she planned on
taking community college classes.[51]  Stephens was assessed as having a GAF score of 65.

In August 2008, medical records again noted that Stephens's anxiety was
controlled by medication and she was observed to be "in no apparent distress."[52]

---

[45] *Id.*
[46] Tr. at 216.
[47] *Id.*
[48] *Id.*
[49] Tr. at 217.
[50] *Id.*
[51] *Id.*
[52] Tr. at 234.

6

In 2009, Stephens filled out a Function Report as part of her disability claim. In that report, she made no mention of any mental disabilities. In fact, she stated that she had a "long attention span," she followed spoken and written instructions "very well," and that she was a "great communicator."[53] She also stated that she handled stress "well," and that "I go along with the flow. I can adapt easily."[54]

## C. Expert Reports

The record contains opinions from two reviewing medical consultants. The first, James Wright, M.D., reviewed the medical evidence and completed a Physical Residual Functional Capacity Assessment form on February 3, 2009. Dr. Wright stated that Stephens suffered from rheumatoid arthritis, obesity and cervical dysplasia.[55] Based upon the record, Dr. Wright opined that Stephens could occasionally lift and/or carry up to 20 pounds, and that she could frequently lift and/or carry up to 10 pounds.[56] He further opined that she could stand and/or walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours.[57] He opined that her ability to push/pull was unlimited.[58] Among his observations, he noted that the "alleged limitations [were] not fully supported by MER and other EOR."[59] Included in the record evidence he emphasized was the Function Report Stephens herself had filled out in January 2009, in which she stated that

---

[53] Tr. 183.
[54] Tr. 183.
[55] Tr. at 274.
[56] Tr. at 275.
[57] Id.
[58] Id.
[59] Id.

she was in pain from her conditions but that she could still perform housecleaning, laundry, and ironing and she was able prepare sandwiches and frozen meals for herself.[60]

In March 2009, the second reviewing physician, John Durfor, M.D., reviewed the RFC Assessment and affirmed Dr. Wright's conclusions.[61]

### D. ALJ Hearing

At the July 9, 2009 hearing, Stephens testified that her most recent employment as a telephone operator at the Lovett Agency was terminated because of poor attendance.[62] Stephens explained that she was initially hired in August of 2008 to work part-time for a total of 20 hours a week, however, pain and swelling caused her to miss three to four days of the five-day work week.[63] As a result, her supervisor reduced her employment to two days a week.[64] Stephens was again unable to maintain that schedule, often missing one of the two days she was supposed to be working.[65] Stephens's supervisor then cut her employment to one day a week and eventually fired her on February 16, 2009.[66]

Stephens testified that, on an average day, she wakes up and watches television for about 30 minutes before lying back down.[67] She stated that, on days she wakes up extremely sore, she takes her medication and gets back in bed without doing anything else.[68] Stephens said the daily preparation of cooking was too difficult for her, and she

---

[60] Tr. at 281, 179.
[61] Tr. at 273.
[62] Tr. at 31.
[63] Tr. at 32.
[64] Tr. at 31.
[65] Tr. at 31.
[66] Tr. at 32
[67] Tr. at 37.
[68] Tr. at 37.

usually eats cereal or makes sandwiches for meals.[69]  Stephens further testified that she could not take showers because she was unable to stand, but that the doctor ordered her a shower chair to ameliorate the problem.[70]

Stephens testified that she basically is unable to do anything with her hands.[71]  She stated she wears pull-on clothing, rather than clothes with buttons, and is only sometimes able to hold a pen and write.[72]  When asked whether she wrote out the medication list provided to the ALJ, Stephens testified that she did.[73]  Stephens said that she does not comb her hair when her hands are swollen or her knuckles and wrists are hurting.[74]

Stephens testified that she can sit no longer than thirty minutes at a time before having to stand up for at least five minutes to combat stiffness and swelling in her feet and legs.[75]  She stated that she is unable to lift and carry one eight-pound gallon of milk or two small quart-sized cartons.[76]  Stephens asserted that she was unable to grocery shop without riding in an automotive cart.[77]

When discussing her previous employment at the Lovett Agency call center, Stephens testified that she could no longer perform her employment duties because the headset cords provided were too short to allow her to stand and move away from the desk

---

[69] Tr. at 36.
[70] Tr. at 37.
[71] Tr. at 36.
[72] Tr. at 36.
[73] Tr. at 36.
[74] Tr. at 38.
[75] Tr. at 39-40.
[76] Tr. at 39.
[77] Tr. at 38.

to stretch her legs.[78]   Stephens also stated that her wrist pain and immobility prevented her from performing the required typing.[79]

Stephens stated that the last time she used cocaine and her arrest for prostitution occurred prior to her employment at the Lovett Agency and the alleged disability onset date.[80]

Stephens initially testified that her arthritis was incurable and that the prescribed medications merely kept the condition from progressing and did not improve her symptoms or functioning.[81]   Stephens did, however, assert that Prednisone helps her pain and inflammation.[82]

A vocational expert ("VE") also testified at the hearing.[83]   The VE classified Stephens's previous employment at the phone answering service as sedentary and unskilled, and her job as an assembly worker as light to medium and unskilled.[84]   The VE was then asked several hypothetical questions regarding the work an individual with the same age, education and work experience as Stephens could perform.[85]   The VE testified that a person with Stephens's characteristics, and who was capable of performing a full range of sedentary work, considering those functional limitations, would be able to complete Stephens's past work at the answering service.[86]

---

[78] Tr. at 41.
[79] Tr. at 41.
[80] Tr. at 34.
[81] Tr. at 42.
[82] Tr. at 43.
[83] Tr. at 44.
[84] Tr. at 45.
[85] Tr. at 45.
[86] Tr. at 45-46.

Next, the VE was asked whether an individual with Stephens's characteristics who could perform sedentary work but required a sit/stand option every 30 minutes would be capable of performing Stephens's prior work at the answering service.[87]  The VE again answered affirmatively, assuming the individual was within the proximity of her work station during the standing breaks.[88]  The VE also testified that a person who was limited to sedentary work, required a sit/stand option and was limited to frequent fingering could also perform this prior work.

The ALJ's next hypothetical asked about a person with Stephen's characteristics who could perform a broad range of sedentary work but with only frequent, rather than constant, fine fingering bilaterally.[89]  Again the VE testified that Stephens's prior work at the answering service, as well as jobs as an order clerk, surveillance system monitor, and telephone solicitor, would be compatible with that restriction.[90]  The VE testified that these jobs existed in significant numbers in the local and national economies.

Finally, the ALJ asked the VE to assume that the ALJ found Stephens's testimony regarding her limitations to be fully credible.  When asked whether a person with all of the limitations Stephens listed during the hearing would be able to perform any of Stephens's past relevant work, the VE stated that such an individual would be incapable of performing that work or any other.[91]

---

[87] Tr. at 46.
[88] Tr. at 46.
[89] Tr. at 46.
[90] Tr. at 47.
[91] Tr. at 47-48.

Stephens's representative was afforded an opportunity to question the VE.[92] Stephens's representative asked only a single question regarding an individual who has to miss work three days out of a five-day work week. The VE stated that such frequent absence was not compatible with sustained employment of any kind.[93]

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which the party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir. 2005) (internal citations and question marks omitted).

---

[92] Tr. at 48.
[93] Tr. at 48.

## III. STANDARD OF REVIEW

When judicially reviewing a determination that an applicant is not entitled to benefits, we determine "(1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *see also* 42 U.S.C. § 405(g) (2010). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (internal quotation marks and citation omitted). The court may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute the court's judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## IV. DISABILITY EVALUATION

### A. *Statutory Basis for Benefits*

Stephens applied for Supplemental Security Income (SSI) benefits. SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110 (1997). Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S.C. § 1382(a) (2004) (financial requirements); 42 U.S.C. § 1382c(a)(3) (2004) (definition of disability).

13

**B. Determination of Disability**

Under the Social Security Act, a "disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy..."  *Id.* § 1382c(a)(3)(B) (2004).   A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality demonstrable by acceptable clinical and laboratory techniques.  *Id.* § 1382c(a)(3)(D).

The Commissioner employs a five-step inquiry to determine whether a claimant is disabled and thus entitled to disability benefits:

1. Is the claimant engaged in substantial gainful activity, i.e. working?  If so, the claimant is not disabled.  If not, the inquiry proceeds to question two.
2. Does the claimant have a severe impairment?  If not the claimant is not disabled. If so, the inquiry continues to question three.
3. Does the severe impairment meet or equal one of the listings set forth in regulation known as Appendix 1?  If so, the claimant is disabled.  If not, the inquiry continues to question four.
4. Can the claimant still perform past relevant work?  If so, the claimant is not disabled. If not, the inquiry proceeds to question five.

   5. Considering the claimant's age, education, work experience, and residual
      functional capacity, is there work that the claimant can do?  If so, the
      claimant is not disabled.  If not, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(I)-(v) (2009); *Newton*, 209 F.3d at 453.  At the first four

steps, the claimant bears the burden of proof; at the final step, the Commissioner does.

*Waters*, 276 F. 3d at 718.

### C. ALJ's decision

      At steps one and two, the ALJ found that Stephens had not engaged in substantial

gainful activity since January 6, 2009, her application date, and that she had five severe

impairments:      rheumatoid      arthritis,      cervical      dysplasia,      lower      back

pseudospondylolisthesis, osteoarthritis, and obesity.[94]  At step three, the ALJ concluded

that none of these severe impairments met or equaled one of the listed impairments for

presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.[95]  At step four,

the ALJ found that Stephens had the residual functional capacity (RFC) to, in an eight-

hour workday, stand or walk with a cane for two hours, sit for six hours with five minute

standing breaks every 30 minutes, and perform frequent, but not constant, fine fingering

bilaterally.[96]  Although the finding in the ALJ's Notice of Unfavorable Decision was that

"the claimant is unable to perform any past relevant work," the ALJ repeated the VE's

testimony that Stephens's past relevant work at a phone answering service was within her

RFC for sedentary and unskilled work.[97]  Continuing to step five, the ALJ found that

---

[94] Tr. at 21.
[95] Tr. at 22.
[96] Tr. at 23.
[97] Tr. at 25.

Stephens was able to perform other work existing in significant numbers in the national economy.[98]   Consequently, the ALJ concluded that Stephens was not disabled within the meaning of the Social Security Act.[99]

## V. ANALYSIS

Stephens argues that the ALJ's decision is not supported by substantial evidence and was reached through the application of incorrect legal standards because the ALJ erred in: (1) failing to properly develop the record regarding Stephens's mental impairment; (2) making inconsistent findings regarding Stephens's ability to perform her past relevant work; (3) finding that Stephens retains the ability to perform work existing in significant numbers in the national economy absent substantial supporting evidence; (4) failing to properly consider Stephens's obesity in connection with her other impairments[100] and explain how conclusions were reached on whether obesity caused any physical or mental limitations as required by SSR 02-1p; and (5) improperly evaluating the opinion of the State Agency Medical Consultant James Wright, M.D.[101]   The Court addresses each argument in turn.

### A. *The ALJ properly considered the evidence regarding Stephens's mental impairment.*

Stephens makes two arguments regarding her mental impairments.   She first argues that the ALJ committed legal error by failing to develop the record regarding her

---

[98] Tr. at 25.
[99] Tr. at 26.
[100] *See* Pl.'s Br. at 10 (noting Stephens's obesity-related and non-related impairments of rheumatoid arthritis, cervical dysplasia, pseudospondylolisthesis in the lower back, and osteoarthritis).
[101] Pl.'s Br. at 10.

mental impairment.[102]   She next asserts that the ALJ's determination that her mental impairments are not severe is not supported by the evidence in the record.

Stephens asserts that medical evidence indicates she suffers from anxiety and depression, and that her global assessment of functioning (GAF) was determined by a treating counselor to be 50.[103]   Stephens points out that a GAF of 50 indicates a person suffering from "serious symptoms"[104] and that this low GAF score, coupled with symptoms of anxiety and depression, required the ALJ to order additional testing in order to more fully develop the record.

When a claimant alleges a mental impairment, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings."   20 C.F.R. § 416.920a(b)(1).   If, after this review of the claimant's medical records, the ALJ determines that the plaintiff has an impairment, the ALJ is required to rate the degree of functional limitation resulting from the impairment.   *Id.* § 416.920a(b)(2).   Where the record is adequate for the ALJ to make a determination, the ALJ is not required to order additional testing. *See Quijas v, Astrue*, 298 Fed. App'x. 391, *2 (5th Cir. 2008); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (holding ALJ did not err by not ordering psychological tests where record showed the claimant was never treated for alleged anxiety, stress, and depression).

In her decision, the ALJ did fully and adequately consider the evidence that was present regarding Stephens's mental impairments.   Using a "paragraph B" mental

---

[102] Pl.'s Br. at 11-12.
[103] Tr. at 216
[104] Pl.'s Br. at 11-12

function analysis, the ALJ concluded that Stephens's medically determinable mental impairments of anxiety and substance abuse disorder produced "no restriction of activities of daily living; mild difficulties in maintaining social function; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation."[105]   Such mild limitations in mental functioning do not represent a significant inability to perform basic work activities.[106]

Further, the ALJ noted that Stephens introduced very little evidence of any treatment for her mental impairments, and that the "majority of [her] mental problems revolve around a history of crack cocaine abuse."[107]   Stephens's medical records support these conclusions—there is no history of formal treatment by a mental health professional and the evaluation from a rehabilitation facility concludes that Stephens's mental problems related to her history of drug abuse.[108]   Stephens claims that seven separate pieces of medical evidence in the record indicate she suffers from anxiety and depression,[109] however, the report from the rehabilitation facility is the only documented mention of depression, and the other references to anxiety in the record (1) list the disorder as one of Stephens's self-reported past medical conditions,[110] (2) declare Stephens's anxiety state as "unspecified,"[111] or (3) assert that her anxiety is controlled by

---

[105] Tr. at 22.
[106] Tr. at 22.
[107] Tr. At 22.
[108] Tr. at 216.
[109] *See* Pl.'s Br. at 11 (citing Tr. 216, 218, 222, 233, 238, 246, 247).
[110] Tr. at 238, 246, 247.
[111] Tr. at 218, 222.

medication.[112]  If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); 20 C.F.R. §§ 404.1530, 416.930 (2010).

Additionally, a low GAF score is not necessarily dispositive of a claimant's disability. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) ("[T]he ALJ has the sole responsibility for determining the claimant's disability status."); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) ("The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly."). Further, Stephens's GAF score of 50 is directly contradicted by Behavioral Health Specialist Anthony Jones' report, which lists Stephens's GAF at 65—indicating only mild symptoms.[113]  An ALJ may disregard statements, such as a treating counselor's GAF score diagnosis, that are brief and conclusory, unsupported by clinical laboratory diagnostic techniques, or inconsistent with the record as a whole. *See, e.g., id.* at 485; *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Oldham v. Schweiker*, 660 F.2d 1078, 1084-85 (5th Cir. 1981).

Finally, Stephen's own testimony supports the ALJ's finding that her mental impairments were not severe—Stephens's testimony made no mention of any restrictions due to any mental impairment. To the contrary, Stephens affirmed that she could

---

[112] Tr. at 217 (declaring a 70-80% improvement in Stephens's functioning and management of anxiety since increase of Paxil from 20 to 40 mg); Tr. at 233 (stating Stephens's anxiety is controlled on Paroxetine).

[113] Tr. at 218; *see* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, at 34 (4th ed. 1994).

complete tasks such as grocery shopping, watching television, making lists and visiting family members when her physical symptoms allowed.  She stated she had no difficulties getting along with others and that she handled stress well.  These statements are further evidence calling Stephens's first, lower, GAF score into question.  "A GAF score of 41 to 50 is classified as reflecting "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Boyd v. Apfel*, 239 F.3d 698, 702 (5th Cir. 2001).

The ALJ did not err by failing to develop the record regarding Stephens's mental impairments.  Further, substantial evidence supports the ALJ's conclusion that Stephens's mental impairments did not cause more than minimal limitation in workplace functioning.  Thus, the ALJ properly found Stephens's mental impairments non-severe.

## B. *The ALJ did not err by finding that Stephens is unable to perform her past work, and any conflict between the ALJ's findings and analysis is at most a harmless error.*

Stephens criticizes the ALJ's decision as being inconsistent and in error when the ALJ found that Stephens was able to perform her past relevant work—stating in bold letters that "the claimant is unable to perform any past relevant work"—but then restating the VE's testimony that Stephens could perform her past work at a telephone answering service both as generally and actually performed.[114]   Stephens contends this is a contradictory finding requiring remand.  Although the ALJ's writing could be improved upon and clarified, remand is not required in this case.

------

[114] Tr. at 25.

The ALJ's clear finding—stated in bold typeface—is that Stephens could not perform her past relevant work.  That finding necessitates the ALJ to continue her analysis in the remainder of the opinion, discussing whether Stephens could perform work in the national economy and whether she was disabled.  The ALJ's continued analysis found that Stephens could perform other work and she was therefore not disabled.  Had the ALJ's finding as to Stephens's past relevant work been otherwise, the ALJ would have stopped the analysis after finding Stephens could have performed her past relevant work.  *See, e.g.*, SSR 96-9p (explaining in the introduction that "[u]nder the sequential evaluation process, once it has been determined that an individual is not engaging in substantial gainful activity and has a 'severe' medically determinable impairment(s) which . . . prevents the individual from performing past relevant work, it must be determined whether the individual can do any other work").  Further, although the VE testified that Stephens could perform her past relevant work at a telephone answering service, substantial evidence supports the ALJ's finding that she could not perform this past relevant work—Stephens's own testimony was that she was unable to perform this job due to her physical and mental impairments.

Furthermore, the court finds that, under the facts of this case, the ALJ's apparent contradiction is a harmless procedural error that does not require remand.  *Alexander v. Astrue*, 412 F. App'x. 719, 722 (5th Cir. 2011).  Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.  *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Remand is necessary only if procedural improprieties

21

cast into doubt the existence of substantial evidence supporting the ALJ's denial of disability benefits. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, where there is "no realistic possibility that, absent the error, the ALJ would have reached a different conclusion," remand is not required. *Alexander*, 412 F. App'x at 722.

### C. The ALJ's hypothetical does not require reversal or remand, even though it did not take into account Stephens's need to use a cane or inquire about a limited ability to lift or carry.

Stephens further challenges the existence of substantial evidence to support the ALJ's finding that she could work as an order clerk, surveillance system monitor, and telephone solicitor.[115]   Stephens contends that the ALJ's finding that she could perform these jobs was based upon the VE's testimony in response to an incomplete hypothetical that failed to include Stephens's need to use a cane when walking or standing.   Further, Stephens argues that the ALJ failed to make any finding regarding the amount of weight she could lift or carry, and that the VE's testimony should have taken her limited ability to lift or carry into account.

Because Stephens's RFC is limited by significant non-exertional impairments,[116] the ALJ could not rely solely on the Medical-Vocational Guidelines of the regulations and was required to consult a VE to determine Stephens's job prospects.   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).   The Fifth Circuit has given great value to the testimony of VEs in determining claimants' ability to work, specifically noting that

---

[115] Pl.'s Br. at 13-15.

[116] Tr. at 23 (in determining Stephens's RFC, the ALJ acknowledged her need for a sit/stand option every 30 minutes and limited Stephens to frequent, but not constant, fine fingering bilaterally).

experts possess familiarity with occupational requirements, such as working conditions and the skills needed for particular jobs. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (explaining how vocational expert testimony supplements the *Dictionary of Occupational Titles* (*DOT*), which simply gives a general description of job duties). A VE is able to compare all the unique requirements of specified jobs with a claimant's medical ailments in order to reach a reasoned conclusion as to what employment the claimant can successfully perform. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

### 1. The ALJ's failure to address Stephens's use of a cane in her hypothetical is not reversible error.

Stephens first asserts that the ALJ's hypothetical failed to include Stephens's need to use a cane, a limitation that was specified in the ALJ's RFC finding.[117] Therefore, Stephens claims, the ALJ's finding that she had the RFC to work as an order clerk, surveillance system monitor, and telephone solicitor was improperly predicated on an inaccurate hypothetical.[118]

During the hearing, the ALJ asked the VE whether jobs existed in the national economy for a person of Stephens's age, with her education, work experience, and physical limitations which require a sit/stand option every thirty minutes and limit her to frequent, not constant, fine fingering.[119] However, the ALJ neglected to mention one of

---

[117] Tr. at 22 ("Claimant has the residual functional capacity to: stand or walk 2 hours in an 8-hour workday with the use of a cane").
[118] Pl.'s Br. at 13-15.
[119] Tr. at 45-47.

the physical limitations specified in Stephens's RFC—her need to use a cane to stand or walk for two hours of an eight hour workday.[120]

    *Bowling v. Shalala* articulates the proper Fifth Circuit standard for determining whether a hypothetical question is defective and, if so, whether the flawed question constitutes reversible error: "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." 36 F.3d 431, 436 (5th Cir. 1994).

    In *Wise v. Barnhart*, the Fifth Circuit applied this principle to a contention by the plaintiff that the ALJ in his case had failed to incorporate all of his alleged disabilities into the hypothetical questions posed to the VE.  101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished).  The court observed "Wise does not dispute that his representative was allowed to cross-examine the vocational expert regarding the administrative law judge's hypothetical.  Thus, even assuming, arguendo, that the [ALJ's] hypothetical was deficient in the respects urged on appeal, because Wise's representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error."  *Id.* (citing *Bowling*, 36 F.3d at 436).

---

[120] Tr. at 23.

In this case, Stephens's attorney had the opportunity to ask the VE to clarify whether she understood the hypothetical posed by the ALJ to include Stephens's alleged need to use a cane, or whether use of a cane would have changed the VE's answers. Stephens's attorney question related only to the potential impact of three absences a week upon employability.   Thus, under *Bowling* and *Wise*, even assuming the ALJ's hypothetical failed to take into account Stephens's need to use a cane, such a failure is not reversible error.

### 2. *ALJ's failure to address the amount of weight Stephens could lift or carry is not reversible error.*

Stephens next argues that the ALJ erred by failing to make a finding in her RFC analysis regarding the amount of weight she could lift and carry.   She also points out that both the ALJ's hypothetical and the VE's testimony are wholly silent on her ability to lift or carry any amount of weight.   She argues that, because the ALJ failed to make an explicit finding on this issue, this Court should presume that the ALJ found that she could not carry any weight whatsoever.  The Court disagrees.[121]

The Fifth Circuit addressed the importance of a thorough analysis of a claimant's abilities with regard to a determination of RFC.   In *Myers v. Apfel*, the Fifth Circuit analyzed a failure by the ALJ in that case to fully address the physical capabilities of the claimant and their impact on her RFC.  238 F.3d 617 (5th Cir. 2001).   The court noted that Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based on all the relevant evidence of an individual's ability to do

---

[121] Regrettably, the response by the Commissioner wholly failed to address this issue.

work-related activities." *Id.* at 620 (citing SSR 96-8p). The *Myers* court noted that an RFC analysis should consider each of the seven strength demands set out in Rulings 96-8p and 96-9p: "RFC involves both exertional and non-exertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately." *Id.* "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." *Id.* In *Myers*, the court held that the ALJ erred by failing to address standing, walking and push/pulling and whether the claimant could perform these tasks on a regular and continuing basis. *Id.* at 621. In reaching that holding, the court noted the ALJ's failure to resolve conflicts in the evidence, that substantial evidence did not support his decision as to the strength factors he did address, and that the ALJ had failed to explain failure to give considerable weight to the opinion of the treating physician in the case. *Id.*

After deciding *Myers*, the Fifth Circuit again addressed the issue of the factor-by-factor analysis in *Onishea v. Barnhart.* 116 Fed. App'x. 1 (5th Cir. 2004). In that unpublished case, the court held that, where an ALJ's analysis does not explicitly set out a complete function-by-function analysis but the RFC assessment is based in part on a function-by-function analysis contained in a state examiner's medical report, the ALJ has satisfied the legal standard set forth in *Myers* and Ruling 96-8p. *See also Beck v. Barnhart*, 205 Fed. App'x. 207, 213-214 (5th Cir. 2006) ("The ALJ based his decision in part on the medical reports of Drs. Pamganamamula and Barnes, which contain a general evaluation of Beck's mobility and a function-by-function analysis of the impact of her

26

impairments on her ability to perform various tasks.  These reports, cited in conjunction with the ALJ's own appraisal of Beck's testimony and review of the record, are supported by substantial evidence and satisfy the *Myers* standard.").

In her opinion addressing Stephens's RFC and finding that Stephens was capable of performing sedentary work with some restrictions, the ALJ discussed both her own evaluation of some of Stephen's physical abilities and their impact upon her RFC, as well her reliance upon the opinion of Dr. Wright, whose opinion contains a function-by-function analysis of the impact of Stephens's impairments upon her ability to perform various tasks.  Although the ALJ did not address the amount of weight Stephens could carry, and whether she could carry the amount specified in the applicable regulations for sedentary work (no more than 10 pounds at a time),[122] Dr. Wright opined that Stephens could carry up to 20 pounds occasionally and up to 10 pounds frequently.[123] Accordingly, the ALJ did not err by failing to provide her own analysis of these functions. *See , e.g., Beck v. Barnhart*, 205 Fed. App'x. 207, 213-214 (5th Cir. 2006)

Further, there is no medical evidence in the record that Stephens's ability to carry or lift was restricted.  Instead, the only evidence of such a restriction was her own testimony at the hearing that she could not lift a gallon of milk, but that she could lift a quart.[124] The ALJ found much of Stephens's testimony to be unsupported by the medical record.  Where a complaint of a restricted ability to perform a physical task is unsupported by the medical evidence, an ALJ does not err by failing to address that

---

[122] 20 C.F.R. § 404.1567(a); SSR 96-9p.
[123] Tr. at 275.
[124] Tr. at 39.

limitation. *See, e.g., Rodriguez v. Commission of Social Security Administration,* 2008 WL 1958985, *11 (N.D. Tex. 2008) ("Although the ALJ only explicitly addressed two of the seven strength demands (lifting and carrying) specified in SSR 96-8p, there is no evidence in the medical record that Plaintiff possessed a restricted ability to sit, stand, walk, push or pull."). In light of the lack of any medical evidence supporting Stephens's claim that her ability to lift or carry was compromised, and in light of the function-by-function analysis performed by the reviewing medical expert, the ALJ's failure to discuss the amount of weight Stephens could lift or carry is not reversible error.

Finally, the Court reaches the same result on Stephens's complaint that the ALJ's hypothetical failed to account for any limitations on her ability to lift or carry that it reached on her complaint that the hypotheticals failed to account for using a cane. Stephens's counsel had an opportunity to ask the VE about how restrictions on her ability to lift or carry would impact her ability to perform particular jobs, but did not do so. Under *Bowling* and *Wise*, the ALJ's failure to include a restricted ability to lift or carry in the hypothetical posed to the VE does not constitute reversible error.

### D. *The ALJ properly considered and explained her findings concerning Stephens's obesity and obesity-related impairments.*

Next, Stephens contends that the ALJ failed to consider the aggregate effect of her obesity in combination with her rheumatoid arthritis, cervical dysplasia, pseudospondylolisthesis, and osteoarthritis when determining her RFC as required by

Social Security Ruling 02-01p.[125]   Stephens claims that her obesity contributes to her medical impairments, and she argues that the ALJ's failure to consider and discuss the record evidence of her obesity prejudiced her claim.  The Court disagrees.

The Social Security Rulings recognize that obesity, though not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments.  *See* C.F.R., Pt. 404, Sub. pt. P, App. 1, § 1.00(Q) (2008); SSR 02-01p.   A claimant's obesity must be considered at all steps of the sequential evaluation process.  SSR 02-01p.

The ALJ stated that she "considered what [e]ffect the claimant's obesity, by itself and in combination with other impairments, has on her ability to perform daily living and work activities."[126]  The ALJ acknowledged that Stephens was morbidly obese[127] and that her obesity was a severe impairment after performing a specific "individualized assessment" of Stephens's obesity under SSR 02-1p.   The ALJ noted that "[w]hile claimant's obesity contributes to difficulty walking and joint problems in her knee, she testified that she is able to sit for 30 minutes and then stand for 5 minutes, which is provided for in the residual functional capacity. . .  The residual functional capacity gives generous restrictions when considering the sparse medical treatment."[128]

---

[125] See SSR 02-01p at *5-7 (stating that obesity remains a complicating factor for many ailments and is a medically determinable impairment to be considered in assessing an individual's RFC).
[126] Tr. at 23.
[127] Tr. at 24.
[128] Tr. at 24.

In short, the ALJ concluded that Stephens's subjective complaints that she could not perform a limited range of sedentary work were not credible.[129]   The ALJ has the sole responsibility to resolve questions of credibility and her credibility determination is entitled to considerable deference.  *See Foster v. Astrue,* 277 Fed. App'x. 462, 63-65 (5th Cir. 2008); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2002).   The ALJ adequately explained her credibility determination, stating that "completely debilitating symptoms that would prevent even sedentary work would expect to be associated with frequent emergency room visits and hospitalizations.  However, the claimant has not been hospitalized and has received only minimal and conservative treatment, primarily consisting of prescribed medications."[130]   Further, although Stephens contended pain and other symptoms prevented her from being employed, the ALJ noted a possible alternate explanation for Stephens's lack of employment dating from her alleged onset of disability:

> Although the claimant testified that she filed for disability following being fired for her last job, it is noted that she has not made any earnings since 2003.  Instead, she alleges disability beginning the same month that she went to jail for prostitution.  In fact, that is the same month she alleges she last used crack cocaine.  Further, the claimant has a history of incarceration for possessing illegal drugs.  Given the claimant's drug history and low earnings record, it is inferred that for reasons other than disability, she has chosen not to work in the past.[131]

---

[129] Tr. at 24.

[130] Tr. at 24.

[131] Tr. at 24.  Stephens contends the ALJ erred by using her criminal history and past drug use as a basis for her RFC.  The Court disagrees.  When read in context, the ALJ's note is a comment upon Stephens's credibility regarding the severity of her symptoms and the reasons for her unemployment.  *See, e.g., Fisher v. Astrue,* 2009 WL 2971308, *17 (S.D. Tex. 2009) ("Finally, in making his determination regarding Fisher's credibility, the ALJ properly considered Fisher's criminal history, including incarceration and/or charges for aggravated assault, burglary, evading arrest, and trespassing.").

Overall, Stephens has failed to identify any objective evidence indicating that her obesity limited her ability to perform basic sedentary work activities, and there is no evidence that Stephens's weight imposed any additional limitations other than those accounted for in the ALJ's RFC assessment.[132]   The ALJ properly considered the issue of obesity in accordance with SSR 02-01p, and substantial evidence supports the ALJ's RFC assessment.

### E.   The ALJ properly considered the opinion of State Agency Medical Consultant James Wright, M.D. along with other evidence of record in determining Stephens's RFC.

Stephens contends that the ALJ improperly relied upon the opinion of Dr. Wright, the non-examining state agency medical consultant.[133]   Stephens also complains that the ALJ's reliance on Dr. Wright's opinions means that the ALJ's RFC determination is not supported by substantial evidence.   Finally, Stephens argues that the ALJ erred by failing to obtain an opinion from a treating physician regarding her functional abilities.[134]

### 1.   The ALJ did not err by relying, in part, on Dr. Wright's opinion.

Dr. Wright completed a RFC assessment on February 3, 2009, finding Stephens's primary diagnosis was rheumatoid arthritis and secondary diagnoses were obesity and cervical dysplasia.[135]   Although he noted an x-ray from 2008 showed that Stephens had pseudospondylolisthesis in her lower back, Dr. Wright did not include this among his

---

[132] See, e.g., Crossley v. Astrue, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.").
[133] Pl.'s Br. at 25.
[134] Pl.'s Br. at 26.
[135] Tr. at 274.

listed diagnoses. As discussed above, Dr. Wright performed a function-by-function analysis and opined that Stephens was capable of performing light work.[136]

The ALJ gave Dr. Wright's opinions great weight, stating that they were consistent with the objective evidence as a whole.[137] However, the ALJ did not accept Dr. Wright's opinion in toto, but instead accommodated for Stephens's limitations by finding her capable of performing sedentary rather than light work, and adding additional limitations as dictated by her RFC.[138]

In her motion for summary judgment, Stephens appears to argue that the ALJ somehow erred by relying on Dr. Wright's opinion because Dr. Wright "did not evaluate all of plaintiff's diagnosis [sic] of record."[139] Stephens cites to *DeWitt v. Astrue*, 381 Fed. App'x 782 (10th Cir. 2010) as support for her argument. In *DeWitt*, the Tenth Circuit reversed and remanded an ALJ's determination where the ALJ relied on the testimony of a non-examining orthopedic specialist who stated that the claimant had problems with her neck and shoulders but did not include obesity among her medical conditions, and who assigned claimant an RFC that was in stark contrast to the RFC assigned by two other agency determinations. 381 Fed. App'x at 785. *DeWitt*, however, is not on point.

It is true that the ALJ must consider the entire record and cannot "pick and choose" only the evidence that supports his position. *Loza v. Apfel*, 219 F.3d 378, 393

---

[136] *See* 20 C.F.R. § 404.1567 (Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").
[137] Tr. at 24.
[138] Tr. at 23-25.
[139] Pl.'s Br. at 25.

(5th Cir. 2000). *DeWitt* presents an instance of an ALJ who relied only on an incomplete and conclusory medical opinion and ignored evidence to the contrary. In contrast, here the ALJ relied on the entire record and, unlike in *DeWitt*, the ALJ did not ignore any contradictory medical evidence. Notably, in this case, unlike in *DeWitt*, there simply is no contradictory evidence. Instead, the ALJ in this case used a complete review of the evidence to formulate an RFC for Stephens that took into account the medical record of her substantiated conditions, the opinion of reviewing agency physicians, and some of her subjective complaints of pain and discomfort.

### 2. The ALJ did not err by failing to obtain a medical source statement regarding Stephens's RFC.

Stephens further contends that the absence of a RFC assessment from one of her treating physicians constitutes reversible error.[140] The ALJ is responsible for assessing a claimant's RFC based on all of the relevant evidence in the record. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005); 20 C.F.R. § 404.1546(c). Although the ALJ should obtain a medical source statement describing the types of work that the claimant can still perform, the absence of such a record, in itself, does not make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See id*; *Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug.19, 2005). In this case, the ALJ properly considered the evidence as a whole, utilizing not only Dr. Wright's RFC assessment, but also Stephens's medical records, subjective complaints made during her

---

[140] Pl.'s Br. at 26.

testimony, and the VE's testimony to determine Stephens's RFC and the effect Stephens's impairments had upon her ability to work. Substantial evidence supports the ALJ's determination and remand is not required.

## CONCLUSION

A review of the record reveals that the ALJ applied the appropriate legal standards in making this determination. Additionally, substantial evidence supports the determination that Stephens was not disabled during the relevant time period. A review of the pleadings, the discovery and disclosure materials on file, and any affidavits shows that there is no genuine issue as to any material fact in this case, and summary judgment is therefore appropriate. FED. R. CIV. P. 56(c). Accordingly, this court **denies** Stephens's Motion for Summary Judgment and **grants** the Commissioner's Motion for Summary Judgment.

Signed at Houston, Texas on December  28 , 2011.

George C. Hanks, Jr.
United States Magistrate Judge